IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:19-cv-00391-RM

DONNA K. SMITH,

    Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security Administration,[1]

    Defendant.

## ORDER

This matter is before the Court on Plaintiff Donna Smith's ("Ms. Smith") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Ms. Smith challenges the final decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), by which he denied Ms. Smith's applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act ("Act"). On remand from the Appeals Council ("Council"), the Administrative Law Judge ("ALJ") ruled Ms. Smith was not disabled within the meaning of the Act from her alleged onset date, October 31, 2012, through the date of the decision, November 22, 2017, and was therefore not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI"). Ms. Smith again appealed the ALJ's decision to the Council, but this time the Council denied her request.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Saul is substituted for Nancy A. Berryhill because he became the Commissioner of Social Security Administration on June 17, 2019.

Defendant provided the Court with the administrative record. (ECF No. 11.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 14, 17, 18.)

For the reasons set forth below, the Court AFFIRMS the ALJ's denial of Ms. Smith's application for DIB and SSI.

**I.     BACKGROUND**

This is an appeal of the second of two denials by the ALJ of Ms. Smith's applications for DIB and SSI. She worked until December 27, 2012, but alleges she became completely disabled on October 31, 2012. (Admin. R. ("Tr.") 23, 93–96, 342–43.) There is no dispute, however, that Ms. Smith did not engage in substantial gainful employment after October 31, 2012. (Tr. 23.) On May 28, 2013 and July 15, 2013, Ms. Smith applied for DIB under Title II and SSI under Title XVI of the Act, respectively, alleging she became disabled as the result of the following conditions: stroke; sulfate sulfite sulfur allergy; blood clots; severe allergies; transthyretin amyloidosis polyneuropathy; anaphylactic shock; "anaphylactics"; angioedema; "sinus brachy cardia"; isolated PVC in heart; ventricular trigeminy; and asthma. (Tr. 402.) Ms. Smith was forty-five years old at the time of the alleged onset of her disability and attained the age of fifty on June 26, 2017. (Tr. 33.)

Ms. Smith's applications were denied (Tr. 151–78), and she requested a hearing before an ALJ. (Tr. 126.) After conducting a hearing on September 1, 2015 (Tr. 87–125), the ALJ affirmed the denial because she, in reliance on testimony from vocational expert Douglas Prutting, determined that Ms. Smith was not disabled from June 1, 2010 through the date of the decision, October 23, 2015. The ALJ determined Ms. Smith was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 182–94.) Ms. Smith requested review of the ALJ's decision. (Tr. 286–88.) On December 9, 2016, the

Council remanded to the ALJ to consider, in relevant part, "new and material evidence submitted by [Ms. Smith]'s treating psychiatrist[] and evaluate the work activity questionnaire at Exhibit 2D." (Tr. 203.)

After consideration of the additional evidence as directed by the Council, the ALJ held another hearing on August 24, 2017 (Tr. 43–86). On November 22, 2017, the ALJ affirmed her initial denial of Ms. Smith's applications for much the same reasons they were previously denied with only minor changes. (Tr. 17–42.) Ms. Smith again appealed the ALJ's decision to the Council. (Tr. 12, 13.) And on December 10, 2018, the Council denied Ms. Smith's request, making the ALJ's denial the final decision of the Commissioner. (Tr. 4–9.)

Ms. Smith timely requested judicial review under 42 U.S.C. § 405(g). (ECF No. 1.)

Ms. Smith challenges the ALJ's findings, arguing the ALJ failed to consider the full extent and degree of Ms. Smith's alleged impairments in crafting her RFC, which tainted the subsequent step five analysis.

    **A.**    **Hearing Testimony**

*September 1, 2015 Hearing.* At Ms. Smith's first hearing on September 1, 2015, she requested that her disability onset date be amended to April 1, 2012. (Tr. 90, 91.) She also testified that despite her onset date, she worked as a Pit Boss at American Gaming Group /d/b/a Wildwood Casino ("Wildwood Casino") between April 2012 and December 27, 2012, her last date of work. (Tr. 92, 93, 104–05); *see also* (Tr. 342, 343). Ms. Smith stopped working due to her poor attendance and lower productivity. (Tr. 93, 94); *see also* (Tr. 342, 343). After some discussion, Ms. Smith again amended her onset date to October 31, 2012 based on the Work Activity Questionnaire completed by Wildwood Casino. (Tr. 96.)

She testified that she was married and lived with her husband and oldest son, who assists in taking care of her, including providing her transportation. (Tr. 97, 98.) She further testified that she spends her time reading, sewing, crocheting, and participating in physical therapy (at home and at a physical therapist). (Tr. 100–01.) She testified that she is able to do laundry, tidy up around the house, and cook family meals. (Tr. 105–06.) However, she testified she is unable to walk around with her husband and son while they are grocery shopping and leaves the yard work to her husband and son as well. (*Id.*)

Ms. Smith identified Drs. Dianna Quan (neurologist), Chris Sharp (psychiatrist), and Alison Heru (psychiatrist) as her primary treating physicians at the University of Colorado and National Jewish Health.[2] (Tr. 102.)

On examination from counsel, Ms. Smith testified she suffered from a variety of impairments, including neuropathy (Tr. 106–08), complications from neck surgery in 2012 (Tr. 108), seizures and spells of unconsciousness (Tr. 108–09), depression (Tr. 110–11), and difficulty concentrating (Tr. 111–12). She also testified she was using a cane to assist in ambulation. (Tr. 109.)

**August 24, 2017 Hearing.** After the Council remanded to the ALJ, the ALJ held a second hearing to update the extent and degree of Ms. Smith's alleged impairments and receive and consider additional record evidence,[3] including a mental health questionnaire completed by Dr.

---

[2] With respect to Ms. Smith's asserted mental illness, the ALJ noted a lack of record evidence from Dr. Heru at National Jewish Health, where Ms. Smith testified she had seen Dr. Heru for her mental illness for about three years. (Tr. 116–19.) The ALJ noted, however, that the earliest psychiatric records as starting in May 2015. (Tr. 118.) Ms. Smith testified that she had seen Dr. Heru at National Jewish until Ms. Smith stopped being treated there only to have Dr. Heru transfer her practice to the University of Colorado where Ms. Smith began seeing Drs. Heru and Sharp.

[3] The Council also remanded to address the issue of whether or not there was a subsidy; however, the ALJ determined that given the amended onset date there was no need to consider this issue. (Tr. 47.)  Ms. Smith does not raise this issue on appeal to this Court. Ms. Smith also submitted medical records generated after the first hearing. (Tr. 1536–1873.)

Aaron Crum (psychiatrist)[4] and a statement from Ms. Smith's former employer.[5] (Tr. 45–47). The ALJ also noted that she considered Ms. Smith's alleged mental health impairments in the first hearing and even posed a hypothetical including Ms. Smith's psychiatric issues and treatment since May 2015. (Tr. 47–48.)

The ALJ noted that the date of last insured expired in June 2017 (Tr. 47) and that Ms. Smith attained the age of fifty on June 26, 2017 (Tr. 58).

Ms. Smith emphasized the deterioration of her physical condition exemplified through an increasing pattern of emergency room visits for chest pain, being placed on oxygen 24/7, and being prescribed additional breakthrough pain medications for the worsening of her neuropathy. (Tr. 58, 66–69.) She also testified her syncope and depression continued to get worse. (Tr. 69–72.) Ms. Smith testified that she could no longer perform the activities she had previously been able to perform (e.g., driving, laundry, cooking, etc.). (Tr. 73.) Ms. Smith specifically testified that she is now unable to drive due to her loss of consciousness episodes and heavy medications. (*Id.*) She otherwise did not elaborate on any of the other activities. (*Id.*)

B.   The ALJ's November 22, 2017 Decision

On November 22, 2017, the ALJ issued her second decision denying Ms. Smith DIB and SSI. (Tr. 20–34.) In reaching her decision, the ALJ followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 49–58); *see also Wilson v. Astrue*, 602 F.3d 1136,

---

[4] Dr. Crum had only begun seeing Ms. Smith a few weeks before the first hearing on July 17, 2015. (Tr. 46.) During the second hearing, the ALJ noted that she could not locate record evidence of Dr. Crum actually providing Ms. Smith any treatment with the accompanying treatment notes to support the mental health questionnaire. (Tr. 51–57.) The ALJ provided Ms. Smith the opportunity to supplement her medical records after the hearing and request a supplemental hearing if necessary. (Tr. 55–57, 63–64, 70–81, 85–86.) The record does not contain evidence that Ms. Smith either requested a supplementary hearing or submitted any additional medical evidence.

[5] The ALJ noted that she had seen the statement, but ultimately determined it had "minimal impact" on her analysis considering Ms. Smith's employment at the Wildwood Casino and alleged onset date overlapped by about two months. (Tr. 46–47).

1139 (10th Cir. 2010). The ALJ determined Ms. Smith met the insured status requirements of the Act through June 30, 2017. (Tr. 23.)

At step one, the ALJ found Ms. Smith had not engaged in substantial gainful activity since October 31, 2012, the amended onset date. (Tr. 23, 96.)

At step two, the ALJ determined Ms. Smith suffered from the following severe impairments:[6] (1) late effects of cerebrovascular disease; (2) polyneuropathy; (3) asthma; (4) depressive disorder; (5) anxiety disorder; and (6) post-traumatic stress disorder ("PTSD"). (*Id.*)

At step three, the ALJ determined Ms. Smith's impairments, both physical and mental, considered independently and in combination, did not meet the severity of a listed impairment. (Tr. 23–25.) The ALJ also included a mental restriction evaluation and found neither "paragraph B" nor "paragraph C" criteria were met. (Tr. 24–25.)

Before reaching step four, the ALJ determined Ms. Smith had a:

> residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift 10 pounds frequently, 20 pounds occasionally; additionally, she can stand or walk, with normal breaks, for a total of only four hours in an eight hour workday, and she may use a cane to ambulate; she can sit for up to six hours in an eight hour workday; she can push or pull with her upper and lower extremities within these weight restrictions; she can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching, but can only frequently finger and feel bilaterally; she should avoid unprotected heights and moving machinery; she can frequently balance, but only occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl, and she should not climb any ladders ropes or scaffolds; the claimant must also avoid exposure to extreme heat or cold. In addition, the claimant requires unskilled work, with SVP [Special Vocational Preparation] of one or two, requiring simple routines and simple decision-making. (Tr. 25.)

Based on the RFC, the ALJ determined at step four that Ms. Smith was unable to perform her past relevant work. (Tr. 32–33.)

---

[6] The ALJ also noted evidence in the record indicating gastro esophageal reflux disease, arthritis, and rhinitis, but concluded these impairments either improved within a year or were mild to moderate in nature. The ALJ Concluded that they, ultimately, did not affect Ms. Smith's ability to work. (*Id.*)

6

At step five, based on the testimony of the vocational expert, Nora Dunne, the ALJ found Ms. Smith could perform other jobs available in significant numbers in the national economy, specifically: mail clerk, non-postal; small products assembler; and electronics worker. (Tr. 33–34.) Therefore, the ALJ concluded that Ms. Smith was not disabled as defined by the Act. (Tr. 34.)

## II. LEGAL STANDARD

As stated, the Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *Wilson*, 602 F.3d at 1139. The claimant bears the burden of proof at steps one through four; if the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five. *Id*. The Court's review of the Commissioner's decision "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177–78 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)) (internal quotations omitted). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id*. (quotation marks and citation omitted). The Court may not reweigh the evidence or substitute its judgment for that of the agency. *Id*.; *see also Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (same).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract

from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).

### III. DISCUSSION

Ms. Smith purportedly presents only two issues. (ECF No. 14, at 6.)[7] However, upon closer review, Ms. Smith actually raises four issues, that the ALJ: (1) erred in the weight accorded to various medical opinions (*id.* at 41–49); (2) did not address the limiting effects of all of Ms. Smith's impairments within the RFC assessment (*id.* at 49–52); (3) did not properly consider Ms. Smith's allegations of pain and other symptoms (*id.* at 53–56); and (4) should not have found that Ms. Smith could do other work at step five (*id.* at 56–59).

#### A. Weight Given to Medical Opinions[8]

Ms. Smith argues the ALJ did not give proper weight to two of her treating physicians', Drs. Quan and Crum, opinions. (Tr. 14, at 41–49.) However, the Court concludes the ALJ adequately described the weight provided to each opinion, including the reasons for doing so. The Court reviews the ALJ's analysis for each.

***Dr. Quan's April 13, 2015 Opinion.*** First, Ms. Smith challenges the "partial weight" given by the ALJ to her neurologist's, Dr. Quan, restrictions. (ECF No. 14, at 43 (citing Tr. 30).) According to Ms. Smith, the ALJ did not give a good reason for giving only "some weight" to a multitude of Ms. Smith's restrictions identified by Dr. Quan in Dr. Quan's April 13, 2015

---

[7] The Court uses the page numbers provided by the CM/ECF system, found in the upper righthand corner of the document.

[8] While Defendant treats Ms. Smith's argument relating to Dr. Barrett's opinion as a challenge to the weight given to it, Ms. Smith only presents Dr. Barrett's opinion as a countervailing opinion that was given too much weight *when compared to her treating physicians' opinions*. In other words, Ms. Smith does not provide a stand-a-lone reason for giving Dr. Barrett's opinion less weight other than the simple argument that Dr. Barrett was not a treating physician. However, this argument is without merit as non-treating physician opinions may be considered by the ALJ. *See Hamilton v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[I]f an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it . . . [and] he [] must give good reasons in his written decision for the weigh he gave to the treating physician's opinion").

opinion (Tr. 1330–35). According to Ms. Smith, the ALJ failed to account for her instability on her feet, central pain syndrome, radiculopathy, light-headedness, peripheral neuropathy, and pseudo seizures.

The treating physician rule provides that the "Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating source." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinions qualifies for 'controlling weight.' " *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)) (some internal quotations omitted). To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.*; *see also* § 404.1527(d)(2).

However, even if a treating physician's opinion is not given controlling weight, that opinion is still entitled to some deference and must be weighed using factors set forth in § 404.1257. *Id.* ("an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight") (internal quotations omitted).

The ALJ concluded the objective medical evidence did not support the degree of Dr. Quan's given restrictions. (Tr. 30.) Specifically, the ALJ determined Dr. Quan's restrictions for Ms. Smith were undermined by Dr. Quan's own examination notes. For example, in August 2016, Dr. Quan observed that despite Ms. Smith's complaints of her legs giving out (which Dr.

9

Quan opined was similar to her prior pseudo seizure disorder) and suffering from increased pain, Ms. Smith's strength was intact and the pain was tolerable with medication. (*Id.* (citing Tr. 1721).) Later that year, Dr. Quan noted Ms. Smith had not had any more episodes of her legs giving out. (*Id.*) Again, her strength was normal though she exhibited an antalgic gait and generalized limb pain. (*Id.*) Generally, however, Dr. Quan observed that Ms. Smith's neuropathy had stabilized, and her mood and somatoform disorder appeared better. (*Id.* (citing 1718).) In follow-up appointments in March and June 2017, Ms. Smith's conditions were stable and maintained with medication. (*Id.* (citing Tr. 1588, 1591, 1710, 1714).) Therefore, this Court finds substantial evidence supports the ALJ's conclusion that Dr. Quan's opinion is inconsistent with reliable medical evidence.

Second, Ms. Smith argues that when comparing Dr. Quan's opinion with the State's examiner, Dr. Barrett, Dr. Quan's opinion should be entitled to more deference. (Tr. 41–43); *see also Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("findings of a nontreating physician based upon limited contact and examination are of suspect reliability"); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") Ms. Smith, however, provides a relevant caveat:

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in your case* record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis added).[9] And if a treating physician's opinion is not given controlling weight, the ALJ looks to the factors in § 404.1527(c)(2)(i) and (c)(2)(ii).

---

[9] Ms. Smith incorrectly cites § 404.1527*(d)*(2).

The Court disagrees that the ALJ gave Dr. Quan's opinion less weight simply because Dr. Barrett's opinion did not agree – instead, the ALJ cited "objective medical evidence" and referenced Ms. Smith's muscle strength and tone. It is clear the comparison was not simply between Dr. Quan and Dr. Barrett, but between Dr. Quan's opinion and Dr. Quan's observations ranging to over a year after she issued her opinion.[10] Consequently, the ALJ gave Dr. Quan's two-year-old opinion partial weight because the degree of Ms. Smith's restrictions was inconsistent with objective medical evidence (e.g., Dr. Quan's June 22, 2017 physician notes).[11] This Court finds the ALJ's conclusion to provide partial weight is supported by substantial evidence.

***Dr. Crum's January 16, 2016 Opinion.*** Much like her argument regarding the weight given to Dr. Quan's opinion, Ms. Smith argues the ALJ erred in finding lesser restrictions than those provided by Ms. Smith's psychologist, Dr. Crum. (ECF No. 14, at 45–49.) Ms. Smith seemingly argues that an ALJ may never differ in her conclusions unless the ALJ employs the assistance of a mental health professional. (ECF No. 14, at 45–49) (citing *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993)). Ms. Smith's argument is that mental health restrictions are generally beyond the ALJ's expertise and the ALJ cannot

---

[10] If one were to take Dr. Quan's opinion at face value, it would appear that Ms. Smith's conditions actually improved over the course of a few years not deteriorated as she argued at her second hearing.

[11] Ms. Smith also argues the ALJ's concluding sentence is unclear in that it does not adequately specify which portions of Dr. Quan's opinion were afforded partial weight. (Tr. 43–44 (citing Tr. 30).) She argues, for example, the ALJ failed to explain how her RFC could allow for fingering and handling where Dr. Quan limits Ms. Smith to rarely doing so. (Tr. 44.) However, Ms. Smith continuously told her treating physicians that she had a number of hobbies she enjoyed doing. *See* (Tr. 31) (ALJ acknowledging Ms. Smith remained active through housekeeping and making jewelry, soap, and stained glass); (Tr. 1784) (reporting "she recently finished [a] stained glass project" on August 7, 2015); (Tr. 1801) (reporting that "[d]espite depression she continues to do active things to help her feel better, (house keeping, jewelry making, spending time with friends, family, pets)" on December 4, 2015); (Tr. 1822) (reporting "her soap making and stained glass making are not providing the amount of relief they previously did" on September 25, 2015). Additionally, the record reflects that as late as April 2, 2017, Ms. Smith exhibited normal strength and the ability to move her extremities without weakness. *See* (Tr. 1574, 1559). Therefore, this Court finds that the ALJ's statement, when viewing her decision and the record in their totality, is sufficiently clear to follow her reasoning. *See Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013).

replace Dr. Crum's opinion with her own. (Tr. 45–46.) However, that is not the standard and that is not what the ALJ did here.

It is true that an ALJ cannot substitute her own lay opinion for a psychological expert's. *Trujillo v. Colvin*, 626 Fed. App'x 749, 752 (10th Cir. 2015). However, the ALJ has an obligation to determine the most Ms. Smith could do despite her limitations. *Id.* (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (stating that the administrative law judge, not a physician, is charged with determining the claimant's residual functional capacity)). Like *Trujillo*, the ALJ here considered Dr. Crum's opinion "against the backdrop of the other psychological evidence." *Trujillo*, 626 Fed. App'x at 753. The *Trujillo* court recognized that an ALJ can satisfy her burden of giving "good reasons" for her assessment by "relying on [her] earlier discussion of the examinations by others." *Id.* (citing 20 C.F.R. § 416.927(c)(2), (e)). In this case, the ALJ need not even rely on others' examinations; instead, she reviewed Dr. Crum's own examination notes, which showed that Dr. Crum's contemporaneous examination contradicts his opinion of the degree of Ms. Smith's restrictions.[12] *See* (Tr. 1804–05, 1863). Consequently, the Court concludes the ALJ's decision to give little weight to Dr. Crum's opinion is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 907–08 (10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and her contemporaneous examination a legitimate factor for rejecting that opinion).

### B.     Limiting Effects of Ms. Smith's Impairments

Next, Ms. Smith argues the ALJ failed to adequately consider the "effect or combined effect" of all of her impairments, but specifically five impairments: (1) lumbar DDD/sciatica; (2)

---

[12] That being said, there is documentary evidence to support the ALJ's conclusion throughout the record, including Dr. Crum's own notes both before and after he authored his opinion. (Tr. 1522–23, 1530–31, 1778, 1770, 1826–27, 1811–12, 1854, 1846–47, 1837); *see also* (ECF No. 17, at 17) (collecting references to Ms. Smith's other providers' notes).

12

pass-out spells/headaches; (3) bradycardia/pleurisy; (4) somatoform disorder; and (5) left shoulder impairment. (Tr. 49–52.) In all, it appears Ms. Smith argues the ALJ failed to even address these issues, and that the Court should at least remand to the ALJ to consider them.

On the contrary, the ALJ did address these issues in detail. *See* (Tr. 28) (noting interpretation of MRI on Ms. Smith's lumbar spine showing only moderate degenerative changes); (Tr. 28–30) (discussing Ms. Smith's treatment and history regarding her loss of consciousness, headaches, and syncopal episodes, and studies showing no physiological basis for her reports); (Tr. 27–29) (discussing Ms. Smith's heart health, noting normal cardiac findings throughout the record); (Tr. 30) (discussing generally normal mental status findings relating to Ms. Smith's somatoform disorder); (Tr. 27–29) (noting many instances of normal upper body strength). Though Ms. Smith styles her argument in such a way that suggests the ALJ simply omitted these alleged impairments, Ms. Smith is actually asking this Court to substitute its judgment for that of the ALJ's and find more severe restrictions. This the Court cannot do. *See Noreja*, 952 F.3d at 1178 ("We may neither reweigh the evidence not substitute our judgment for that of the agency."). Consequently, the Court finds the ALJ adequately addressed each alleged impairment in crafting her RFC. *See Ritter v. Commissioner, Social Security Administration*, No. 18-cv-03156-NYW, 2019 WL 6838958, at *5 (D. Colo. Dec. 16, 2019) (citing *Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004)) ("The ALJ need not identify affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category, and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence.") (internal quotations omitted).

### C. Pain Allegations

Next, Ms. Smith argues the ALJ failed to adequately address her complaints of pain, and how pain may exacerbate her other impairments, in accordance with the *Luna* factors; instead, the ALJ inappropriately ignored Ms. Smith's chronic pain syndrome which is well-documented throughout the record. (Tr. 53–56) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)); *See also Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). According to Ms. Smith, the ALJ should have considered: (1) whether Ms. Smith established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and Ms. Smith's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Ms. Smith's pain is in fact disabling. *See Thompson*, 987 F.2d at 1488. Ms. Smith argues that she carried her burden on the first factor, but the ALJ did not proceed to the second factor.

While the ALJ did not cite *Luna*, she did effectively apply the Luna factors and provided reasons for why she concluded Ms. Smith's physical and mental impairments were not as severe as Ms. Smith claimed. As previously stated, Ms. Smith was able to engage in hobbies.[13] *See supra* note 11 and accompanying text. The ALJ may consider these activities in determining Ms. Smith's "maximum sustained work capability" (i.e., the most Ms. Smith can do despite her impairments). *See Valdez v. Apfel*, 102 F. Supp. 2d 1203, 1205 (D. Colo. 2000) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Wilson*, 602 F.3d at 1146 (ALJ may consider claimant's daily activities); *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (the fact that a claimant would even attempt activities that could end up with her either aggravating

---

[13] It matters not that these activities were for charity or for therapy. *See* (Tr. 56.) What matters is that Ms. Smith believes she is capable of performing these activities and can in fact routinely perform these activities.

14

an existing injury or sustaining new injuries "indicates that the claimant's everyday limitations were not as severe as she alleged").

Additionally, the ALJ concluded Ms. Smith's impairments were not as severe as she complained because her claimed limitations did not comport with the objective medical evidence. *See supra* 9–10. In other words, the ALJ, having been presented with evidence that could have suggested a more restrictive RFC, weighed the evidence and concluded the record did not support the degree of impairment asserted by Ms. Smith. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("The ALJ is entitled to resolve such evidentiary conflicts and did so.") Therefore, the Court concludes the ALJ's analysis satisfied the *Luna* factors, finding at the very least that the objective and subjective evidence did not support a finding that Ms. Smith's pain was disabling. The ALJ's conclusion is supported by substantial evidence.

D.    **ALJ's Step Five Analysis Was Supported by Substantial Evidence**

Finally, Ms. Smith argues the ALJ's step five burden was not satisfied because she failed to include the aforementioned impairments and their degree and effect. (ECF No. 14, at 56–59.) However, this is nothing more than another crack at the ALJ's RFC determination, which the Court has determined above is supported by substantial evidence. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000)). Consequently, there was no error in the VE's testimony that Ms. Smith could perform work that is available in significant numbers in the national economy.

IV.    **CONCLUSION**

Based on the foregoing, it is ORDERED:

(1)    That the Defendant's denial of disability insurance benefits and supplemental security income under the Social Security Act is AFFIRMED;

(2) That JUDGMENT shall enter in favor of Defendant and against Ms. Smith, with each party to bear their own fees and costs; and

(3) That the Clerk shall close the case.

DATED this 25th day of November, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge